FILED

2012 May-09  AM 09:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| CHARLOTTE J. GOODWIN, | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | 7:11-cv-0473-LSC |
| | ) | |
| RITE AID HEADQUARTERS | ) | |
| CORPORATION and RITE AID | ) | |
| OF ALABAMA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OF OPINION

## I. Introduction & Background

The Court has for consideration a motion for summary judgment from Defendants Rite Aid Headquarters Corporation and Rite Aid of Alabama, Inc. (collectively "Rite Aid"). (Doc. 16.) Also before the Court is a pro se document from Plaintiff captioned as a "Response in Opposition to Summary Judgment," which the Court construes as a motion for various relief. (Doc. 24.)

The pending motion for summary judgment was filed by Rite Aid on January 31, 2012. The discovery period ended over a month earlier, on December 30, 2011. (*See* Doc. 13 at 3.) Under the terms of the Uniform Initial Order, Plaintiff's deadline for filing a response to the summary-judgment motion was three weeks after it was

filed, or February 21, 2012. (*See* Doc. 4 at 13.) On February 20, Plaintiff instead filed a "Motion for Rule 56(d) Relief," claiming that without further discovery, Plaintiff "could not present facts essential to justify plaintiff's opposition" to the summary-judgment motion.[1] (Doc. 19 at 1.) Plaintiff filed a supporting brief along with the motion. (Doc. 20.) The Court provided Rite Aid with a seven-day window in which to submit a response brief, which was timely filed. (Doc. 21.) Over a month later, Plaintiff filed an additional motion (Doc. 22) asking for leave to file a reply brief, which was granted despite the delay in filing it. (Doc. 23 at 1.)

After considering the briefs in support of Plaintiff's Rule 56(d) motion, and Defendants' opposition to it, the Court denied the requested relief. In so ruling, the Court noted that Plaintiff was seeking time to conduct additional discovery, but had allowed the discovery period to lapse—and to remain expired for almost two months—without making any efforts to extend it. (Doc. 23 at 3.) The Court also observed that Plaintiff had delayed her Rule 56(d) motion until the day before her summary-judgment response was due, and provided no justifications for either the failure to conduct discovery within the allotted discovery period or the protracted delay in seeking additional discovery. (*Id.*)

---

[1] All of Plaintiff's actions described here were performed by and through her counsel of record, J. Courtney Wilson, unless otherwise noted.

Within her brief in support of the Rule 56(d) motion, Plaintiff explicitly "abandon[ed] all claims except for a retaliatorily motivated discharge claim." (Doc. 20 at 1.) Although the Court denied further discovery, an additional fourteen-day briefing period was provided for Plaintiff to provide a summary-judgment response for that one remaining claim. That fourteen-day period expired on April 20, 2012.

On April 23, Plaintiff Charlotte Goodwin filed the present document without the assistance of her attorney. Although captioned as a "Response in Opposition to Summary Judgment," the document is essentially a motion asking the Court (1) to appoint counsel on Plaintiff's behalf, (2) to provide her additional time to find replacement counsel, (3) to revive her previously abandoned claims, and (4) to deny summary judgment in light of the arguments she goes on to make.

The first three of these requests all fail for the same reason. Throughout this case, Plaintiff has had the assistance of able counsel of her own choosing. The failure of her counsel to procure a desired outcome does not provide good cause for the appointment of new counsel, the further expansion of repeatedly extended deadlines, or the retraction of strategic choices. Litigants cannot simply demand a "do-over" with new counsel if a present advocate is unsuccessful. Our form of representative litigation requires that, for better or worse, "clients are to be held accountable for the

acts and omissions of their attorneys." *Young v. City of Palm Bay*, 358 F.3d 859, 864 (11th Cir. 2004) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 396-97 (1993)). As such, Plaintiff's first three requests—for appointed counsel, for more time to find new counsel on her own, and for the revival of her abandoned claims—are due to be denied.

Plaintiff's fourth request is to accept her pro se submission as a properly filed response, and to deny the summary-judgment motion based on its contents. Even with the extension of the response deadline—from February 21 to April 20—the present document is untimely. But given her attorney's refusal to file a response on her behalf (informing her on April 18 that any response would be "frivolous and therefore sanctionable" without additional discovery (Doc. 24-1 at 1)), the Court will not penalize Plaintiff for the lateness of her pro se response. The Court has considered her arguments in its analysis below, mindful that pro se documents "are held to a less stringent standard than pleadings drafted by attorneys," and are to be "liberally construed." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003). At the same time, the Court cannot rest its decision on unsupported factual assertions, since "[s]tatements of fact in a party's brief, not in proper affidavit form, cannot be considered in determining if a genuine issue of material fact exists." *Helmich v. Kennedy*, 796 F.2d.

1441, 1443 (11th Cir. 1986). Rather, the Court can rely only on facts which are properly supported by the evidence, and "set forth by affidavit or otherwise." *Lewis v. Casey*, 518 U.S. 343, 358 (1996).

## II. Facts[2]

Plaintiff Charlotte Goodwin is a pharmacist licensed with the Alabama State Board of Pharmacy. She began working for Defendant Rite Aid as a staff pharmacist in Tuscaloosa in 1998. In April of 2000, she transferred from that location (Store 7037) to another store in Tuscaloosa (Store 7039), where she remained for the rest of her employment with Rite Aid. In March of 2002, she was promoted from staff pharmacist to pharmacy manager.

While Plaintiff managed the pharmacy, Nathan West managed the rest of the store. Plaintiff and West "never really saw eye to eye." (Doc. 18-11 at 10.) At times, West's behavior prompted Plaintiff to complain to West and to higher managers within the company. These included complaints about West's refusal to man a

---

[2] The facts set out in this opinion are gleaned in part from the portions of the Joint Status Report agreed to by both parties. (Doc. 15 at 2.) The Court also relies on its own examination of the evidentiary record, and the undisputed facts presented in Rite Aid's motion for summary judgment. (Doc. 17 at 5.) As stated in the Uniform Initial Order, "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment." (Doc. 4 at 16.) While Rite Aid's facts are largely uncontroverted, all reasonable doubts about the facts have still been resolved in favor of Plaintiff. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

register on truck-delivery days, when the rest of the front-end staff were busy stocking the store. This left only pharmacy staff to check out customers. Another complaint concerned West's assignment of a pharmacy employee to work the front of the store on Mother's Day, while the front-end employees had the day off. Plaintiff also complained about West searching the bags of pharmacy employees when they arrived for work at 9:00 a.m. Plaintiff's complaints never included allegations of racial discrimination.

The work of a pharmacist includes, among other things, performing Quality Assurance Review ("QA"). QA involves scanning a prescription label, checking the label's contents against the computer screen, scanning the stock bottle from which medication is dispensed, inspecting the contents of the container while that dispensing takes place, and then entering approval of the prescription. Final approval is done by means of a biometric fingerprint scanner, but can also be accomplished by manually entering the pharmacist's override code. Each pharmacist is responsible for creating a unique override code and changing it from time to time. While pharmacy technicians assist with the work in the pharmacy, the ultimate responsibility for a prescription's accuracy lies with the pharmacist. Both Rite Aid policy and Alabama state law require that pharmacists—not technicians—QA each prescription. Rite Aid policy and

Alabama law also prohibit pharmacists from disclosing their override codes to technicians.

In May of 2009, Rite Aid began an investigation of store 7039, where Plaintiff was the pharmacy manager. The managers conducting the investigation interviewed Simone Coleman, one of the pharmacy technicians. Coleman told them that one of the other technicians, Latonya Hill, had been dispensing and QA'ing prescriptions on her own, using Plaintiff's override code. He stated that this "has been going on for quite some time now," and was allowing patients to receive medication that had not been reviewed by a pharmacist.

After interviewing Coleman, the investigators next interviewed Latonya Hill. Her statement provided simply that she "[didn't] want to provide a statement." The investigators then turned to Plaintiff. After they told her what Coleman had alleged, Plaintiff denied ever giving her code to Latonya Hill. She did admit, however, to giving her override code to an intern in 2008. In the statement she provided at the conclusion of the interview, she said "I do not believe Latonya Hill keyed in my #'s to QA any prescriptions." After her interview, Plaintiff was suspended without pay while the investigation continued. On May 7, 2009, Rite Aid informed her that her services were no longer needed. Latonya Hill's employment was likewise terminated.

Plaintiff filed her charge of discrimination with the EEOC on May 13, 2009, and received a right-to-sue letter on November 9, 2010. She filed the instant suit on February 10, 2011, alleging the violation of her rights as guaranteed by 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Age Discrimination in Employment Act of 1967 ("ADEA"). Most of her claims have been voluntarily abandoned, leaving only her claim for retaliation. (Doc. 20 at 1.)

## III. Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In

evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the movant has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

## IV.    Discussion

Retaliation claims that rely on circumstantial evidence are analyzed using the burden-shifting paradigm established in *McDonnell Douglas Corp. v. Green*, 411, U.S. 792, 93 (1973). *See Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009). Under the *McDonnell Douglas* framework, the plaintiff first bears the burden of establishing her prima facie case. To make out a prima facie case of retaliation, a plaintiff must "prove that [s]he engaged in statutorily protected activity, [s]he suffered a materially adverse

action, and there was some causal relation between the two events." *Goldsmith v. Bagby Elevator Co., Inc*. 513 F.3d 1261, 1277 (11th Cir. 2008). *See also Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002).

Once that prima facie case has been demonstrated, *McDonnell Douglas* next requires defendants to meet their "burden of producing a legitimate, non-discriminatory reason for the challenged employment action." *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001). Finally, "[i]f such a reason is produced, a plaintiff then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination." *Id*.

### 1. Plaintiff's Prima Facie Case

Of the three requirements for making out a prima facie case of retaliation, Plaintiff is lacking two. There is no dispute that termination of an employee constitutes an "adverse employment action." Plaintiff has not shown, however, that she engaged in any statutorily protected activity, or that there was any connection between such activity and her termination.

The only protected activities that Plaintiff claims to have engaged in are the various complaints she made to various managers concerning West's behavior: bag checks, the assignment of pharmacy staff to assist at the front-end registers, etc.

Plaintiff admits that "[n]one of her complaints used the words 'race' or 'discrimination' that she recalls." (Doc. 20 at 4.) Instead, her complaints were "couched in the terms of the pharmacy vs the front end retail staff."[3] (Doc. 20-2 at 2.) Plaintiff claims that simply because "[t]he front was *mostly* white," and the pharmacy technicians—although not all the pharmacy staff—were "African-American," the managers "had to be aware that plaintiff was complaining about race." (Doc. 20 at 5, emphasis added.) Such a connection to race is far too tenuous. Plaintiff's complaints about West do not constitute statutorily protected activity, because "[u]nfair treatment, absent discrimination based on race, sex, or national origin, is not an unlawful employment practice under Title VII." *Coutu v. Martin County Bd. of County Com'rs*, 47 F.3d 1068, 1074 (11th Cir.1995).

Even if Plaintiff's complaints related to race, she would still have to show "that the decision-makers were aware of the protected conduct and that the protected

_____

[3] In Plaintiffs reply to the 56(d) motion response, Plaintiff purports to withdraw from her earlier position that she "had not used any explicit terms to complain of racial discrimination." (Doc. 22-1 at 9.) Plaintiff contends that inspection of her deposition reveals that she "made an explicit racial complaint" to West at one point. (*Id.*) But the section referred to does not mention any "explicit racial complaint." Instead, Plaintiff describes how West gave Mother's Day off to front-end employees who "had something else to do," and asked a pharmacy employee who "had been written up too many times to count" to fill in for them that day. Plaintiff twice used the word "white" in her deposition to describe the women who were given the day off. (*Id.*) The Court does not find this after-the-fact description to contradict Plaintiff's explicit statement that "'race' or 'discrimination'" were never verbalized as the reasons for her complaints. (Doc. 20 at 4.) But even if Plaintiff's Mother's Day complaint was one of racial discrimination, she still has offered nothing to demonstrate a causal connection between the complaint and her termination. As discussed below, the approximately one-year gap between the two events is far too long to demonstrate causation.

activity and the adverse action were not wholly unrelated." *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000). The closest Plaintiff comes to showing such "awareness of protected conduct" is her expectation that the decisionmakers should have noticed that her complaints all related to the pharmacy staff, then should have observed the difference in racial composition between the pharmacy and the rest of the store, and then should have assumed that this difference in demographics—and not her stated reasons—were the real cause for Plaintiff's complaints. Plaintiff has not shown that the relevant decisionmakers had even the slightest clue that race, or any other protected category, was underlying her complaints. Additionally, her termination followed swiftly on the heels of Rite Aid's investigation, but was far removed in time from her earlier complaints. Without offering anything but closeness in time to establish causation, this is especially problematic for Plaintiff's prima facie case. *See Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir.2006) ("We are not persuaded that three months . . . is sufficiently proximate to show causation.") In short, Plaintiff has done nothing to suggest that her complaints about West were "not wholly unrelated" to being relieved of her position.

## 2. Legitimate, Non-Discriminatory Reasons

Assuming for the sake of argument that Plaintiff had put forward a sufficient prima facie case, the burden would then shift to Defendants to produce a legitimate, non-discriminatory reason for their hiring decisions. *Denney*, 247 F.3d at 1183. The employer's burden at this stage is "exceedingly light." *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983). If the employer articulates one or more such reasons, even if it does not "persuade the court that it was actually motivated by the proffered reasons . . . then the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination." *Brown*, 597 F.3d 1160, 1174 (11th Cir. 2010) (internal quotes omitted).

Rite Aid's primary reason for firing Plaintiff is because she allegedly gave her password to a pharmacy technician and allowed for prescriptions to be dispensed without a proper, pharmacist-conducted QA. Plaintiff disputes this allegation, but its factual accuracy is irrelevant at this stage. An employer's good-faith mistaken belief in the misconduct of an employee is sufficient to meet the employer's burden at this step in the analysis, whether the employee is guilty of the misconduct or not. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). For this reason,

Plaintiff's appeal to findings of the Alabama Board of Pharmacy (*see, e.g.*, Doc 24 at 3) entirely misses the point. Neither the Board's decision, nor its file, nor anything else put forward by plaintiff has any bearing on Rite Aid's good-faith belief in Plaintiff's misconduct at the time she was dismissed. Rite Aid's burden at this stage of the analysis is easily satisfied.

### 3. Demonstration of Pretext

Once defendants have put forward a legitimate, non-discriminatory reason, the "inquiry 'proceeds to a new level of specificity,' in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination." *Joe's Stone Crabs, Inc.*, 296 F.3d at 1273 (quoting *Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255–56 (1981)). Plaintiff can do this "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quotations and citations omitted).

Plaintiff attempts to show pretext by arguing that other employees violated company policy but were not similarly dismissed. Plaintiff identifies three such individuals: Tom Myers, Roy Stipe, and Craig McDaniel (Doc. 18-2 at 29; Doc 24 at

9.). For Myers and Stipe, the alleged misconduct appears to rest only on Plaintiff's own assumptions and speculations. Even if Plaintiff could support her assertions about their conduct, only awareness of it by their superiors—and not Plaintiff—would be relevant. There is no indication that the relevant decisionmakers were aware of any alleged misconduct on their part. McDaniel is equally unhelpful for showing pretext, but for a different reason: his alleged misconduct *was* reported to managers, including those involved in Plaintiff's own case. The result for McDaniel was the same as it was for Plaintiff: his employment with Rite Aid was terminated. (Doc. 18-4 at 4.)

Although "a plaintiff in a retaliation case need prove only that retaliatory animus was one factor in the adverse employment decision," *Brown v. Alabama Dept. of Transp.*, 597 F.3d 1160, 1182 (11th Cir. 2010), Plaintiff has failed to show any evidence of retaliatory animus. None of the evidence she offers can even "yield an inference of . . . retaliation." *Id.* at 1183. At this stage of the analysis, "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993). Plaintiff has failed to show either of these things. As such, she cannot rebut the legitimate, non-discriminatory reasons given by Defendants.

**V. Conclusion**

Plaintiff has failed to make out a prima facie case for retaliation and cannot rebut Rite Aid's legitimate, nondiscriminatory reasons for her dismissal. Summary judgment is therefore appropriate for her claim. A separate Order consistent with this opinion will be entered.

Done this <u>9th</u> day of <u>May 2012</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[167037]